Jose De Refugio RICO–SORIO, Eleanor Rico-Sorio, Plaintiffs,

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE, Defendant.**

Civ. No. 82–365–BU.

United States District Court,
D. Oregon.

Dec. 17, 1982.

Richard M. Ginsburg, Spencer M. Neal, Oregon Legal Services Corp., Farmworker Office, Hillsboro, Or., for plaintiffs.

Charles H. Turner, U.S. Atty., D. Or., Laury H. Hennings, Asst. U.S. Atty., Portland, Or., for defendant.

OPINION and ORDER

JAMES M. BURNS, Chief Judge:

INTRODUCTION

This is a petition for attorney's fees. Jose de Refugio Rico-Sorio brought an action to stop the United States Immigration and Naturalization Service (INS) from deporting him. I temporarily restrained Rico-Sorio's deportation but denied his request for injunctive relief. I then granted Rico-Sorio thirty days to leave the country voluntarily. Rico-Sorio's attorneys, Oregon Legal Services Corporation (OLS), now petition for $5,086.88 in fees and costs pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. For reasons set forth below, I deny the petition.

FACTS

Rico-Sorio is a Mexican citizen who was living illegally in the United States. On September 9, 1981, Rico-Sorio married an American citizen, Eleanor Rivera-Anzaldua. As the immediate relative of an American

citizen, Rico-Sorio became eligible to apply for permanent resident alien status. 8 U.S.C. §§ 1151(b), 1255(a).

On September 10, 1981, an immigration judge found Rico-Sorio to be deportable. However, the judge granted Rico-Sorio the privilege of leaving the country voluntarily within sixty days. By departing voluntarily, Rico-Sorio would remain eligible to become a legal resident. Had the judge deported Rico-Sorio, he would not have been able to immigrate to this country. *Id.* § 1182(a)(17).

The judge granted Rico-Sorio a voluntary departure date because Eleanor intended to file a visa petition in his behalf. This would pave the way for Rico-Sorio's legal entry into the United States. If INS approved the petition, establishing his marriage to an American, Rico-Sorio could proceed to apply for a visa. Ordinarily, the visa petition and application process takes about six months. To keep the family together during this period, INS routinely extends applicants' voluntary departure dates. These extensions are, however, within the discretion of INS. *Id.* § 1252(b); 8 C.F.R. §§ 242.5(a)(2), 244.2.

On November 5, 1981, Eleanor filed the visa petition with INS. Rico-Sorio did not formally request INS to extend his departure date but, from the papers filed, INS would normally assume the petitioner was requesting an extension.

On January 12, 1982, INS notified Rico-Sorio to appear for deportation on January 27, because he had not voluntarily departed by November 10, 1981 and had not requested and been granted an extension of his voluntary departure date. INS had lost Rico-Sorio's petition in its bureaucratic labyrinth.

Rico-Sorio protested that he had filed the petition and requested an extension. On January 25, 1982, INS granted Rico-Sorio a stay of deportation until February 27, 1982, to look for the file. INS did not find the file with the petition within that month's

time. INS apparently believed Rico-Sorio had not filed a petition and that OLS was merely playing for time. Consequently, on February 22, INS again notified Rico-Sorio to report for deportation, this time on March 1, 1982.

By February 25, INS realized it had, in fact, received Rico-Sorio's petition and began to trace it. INS granted Rico-Sorio another stay of deportation until March 5, and suggested he submit a second visa petition in case INS could not find the original. Rico-Sorio mailed another petition that day.

This might have resolved the matter. But, on March 2, 1982, Rico-Sorio was arrested for burglary of a tavern in Idaho. On March 10, he pled guilty to a charge of unlawful entry and was sentenced to six months in jail.[1] Consequently, on March 12, INS notified Rico-Sorio it would deport him on March 16.

Rico-Sorio filed this action on March 16, seeking (1) a temporary order restraining INS from deporting him and (2) preliminary and permanent injunctions requiring INS to extend his voluntary departure date until INS processed his visa petition and application. At that time, Rico-Sorio was about to leave Boise for the INS deportation center in California. At my request, INS removed Rico-Sorio from the bus. The following day, I granted Rico-Sorio a temporary restraining order so I could consider his request for an injunction.

Rico-Sorio alleged INS abused its discretion by refusing to grant him the extension of his voluntary departure date. Following an evidentiary hearing, I ruled on March 26, that INS had not abused its broad discretion by refusing to allow Rico-Sorio to stay in this country while it processed his visa petition. *Cf. INS v. Miranda,* —— U.S. ——, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) (per curiam order). Therefore, I denied Rico-Sorio's request for injunctive relief. Instead, I renewed for thirty days INS's previous voluntary departure extension. *See De Reynoso v. INS,* 627 F.2d 958, 960 (9th Cir.1980). Because this litigation un-

---

1. The court suspended five months of this sentence, and reduced the remaining one month to time served provided Rico-Sorio left the United States.

covered new information, such as Rico-Sorio's lost file, I believed the parties would benefit from some time to reflect on their respective positions. However, INS, in its discretion, declined to extend Rico-Sorio's departure beyond the April 26, 1982 date set by the court's order. At the end of the thirty days, Rico-Sorio departed on foot from the United States at San Ysidro, California. Currently, he awaits INS's processing of his visa petition.

## LAW

Congress enacted the EAJA as a three-year experiment[2] in the allocation of the costs of litigation against the government. The EAJA overturns the traditional "American rule," according to which courts do not award fees unless the suit was prosecuted in bad faith, and moves toward the English rule that the prevailing party ordinarily is awarded the costs of litigation. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 8–10, *reprinted in* [1980] U.S.Code Cong. & Ad.News 4953, 4986–88. The premise of the English rule is that the fee award is not a sanction to deter losing litigation but is a proper allocation of the costs of the litigation. The legislative history expresses this view:

> The bill rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy.... The bill thus recognizes that the expense of correcting error on the part of the Government should not rest wholly on the party whose willingness to litigate or adjudicate has helped to define the limits

of Federal authority. Where parties are serving a public purpose, it is unfair to ask them to ... bear the costs of vindicating their rights.

*Id.* at 10, *reprinted in* [1980] U.S.Code Cong. & Ad.News at 4988–89.

OLS seeks fees under the EAJA pursuant to two separate subsections:

(1) subsection 2412(b) gives the court discretion to award fees to a prevailing party, and provides that the United States "shall be liable ... to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award"; and

(2) subsection 2412(d)(1)(A), which requires that the court award fees to a prevailing party in a civil action against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

Ordinarily, to evaluate OLS's request for fees under these provisions, the court must determine: (a) whether the plaintiff was a "prevailing party"; (b) whether the position of the United States was "substantially justified" and, if not, whether special circumstances nonetheless make an award unjust; and (c) whether any party other than the United States would be liable for fees under the common law or pursuant to specific statutory authority. Because I conclude Rico-Sorio did not prevail in his action against INS, I deny OLS's petition without deciding the more difficult questions this statute raises.[3]

---

**2.** Under the EAJA's "sunset provision," subsection (d) is repealed October 1, 1984. Pub.L. No. 96–481, § 204(c), 94 Stat. 2327 (1980).

**3.** Among the troublesome questions section 2412 raises are the following:

(1) Which "position" must the government justify? *Compare Alspach v. District Director of Internal Revenue,* 527 F.Supp. 225 (D.Md. 1981) (government's position in the litigation) *with Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348 (D.D.C.1982) *appeal docketed,* No. 82–1644 (D.C.Cir. June 9, 1982) (underlying government action) *and Citizen's Coalition for Block Grant Compliance v. City of Euclid,* 537 F.Supp. 422

(N.D. Ohio 1982) (distinction largely academic because to defend an unjustifiable action in court may itself be unjustifiable).

(2) When is the government's position "substantially justified"? *Compare* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* [1980] U.S.Code Cong. & Ad.News 4953, 4989 ("The test of whether or not a Government action is substantially justified is essentially one of reasonableness.") *and Wolverton v. Schweiker,* 533 F.Supp. 420, 424–25 (D. Idaho 1982) (standard is "slightly above one based on reasonableness.") *with Estate of Berg v. United States,* 687 F.2d 377, 383 (Ct.Cl.1982) (government's position unjustified if it is "reprehensi-

## DISCUSSION

The EAJA does not define "prevailing party." However, the legislative history states Congress's intent "that the interpretation of the term in [the EAJA] be consistent with the law that has developed under existing statutes." H.R.Rep. No. 1418, 2d Sess. 11, *reprinted in* [1980] U.S.Code Cong. & Ad.News 4990; *see United States v. 101.-80 Acres of Land, More or Less, Situated in Idaho County, Idaho,* 92 F.R.D. 774 (D.Idaho 1982) (landowner in condemnation suit cannot be prevailing party under section 2412). The Ninth Circuit has held recently that "prevailing party" means the same under the EAJA as it does under 42 U.S.C. § 1988. *NLRB v. Doral Building Services, Inc.,* 680 F.2d 647, 647 (9th Cir.1982) (per curiam order). Therefore, though there is as yet little case law discussing section 2412, cases construing section 1988 are instructive here.

Although the court may award fees to a party who has prevailed on less than all of his case, generally, the court may award fees only if the plaintiff "prevailed on the merits of at least some of his claims." *Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980) (per curiam order) (reversal of directed verdict and remand for new trial does not make the plaintiff a prevailing party).

The extension of Rico-Sorio's voluntary departure date prevented INS from deporting Rico-Sorio. The order allowed Rico-Sorio to leave the country of his own accord, rather than under an order of deportation. Had INS deported Rico-Sorio, he could not have immigrated to this country. In this regard, Rico-Sorio is better off than had I not acted. But this does not mean Rico-So-

rio is a "prevailing party." By granting Rico-Sorio a temporary restraining order and by renewing the extension of his voluntary departure date, I merely preserved the status quo by warding off a threatened irreparable harm. By denying Rico-Sorio's request for an injunction, I ruled against Rico-Sorio on the merits.

OLS cites no cases, nor am I aware of any, which, for attorney's fees purposes, find a plaintiff to be a "prevailing party" when the plaintiff merely preserves the status quo when he or she might be irreparably harmed if the court did not grant temporary relief. On the contrary, the only court to have considered this situation declined to award fees. *Bly v. McLeod,* 605 F.2d 134, 137 (4th Cir.1979).[4] *Bly* reflects a method of analysis which I find sound, and which I believe accords with the cases in this circuit. The Supreme Court cited *Bly* with approval in *Hanrahan,* 446 U.S. at 758 n. 4, 759, 100 S.Ct. at 1989 n. 4, 1990.

In *Bly,* a group of chemistry professors planned to be out of South Carolina on the day of the 1972 primary election. The state attorney general denied the plaintiffs' applications for absentee ballots because the plaintiffs did not, and indeed, could not, claim they were unable to appear due to ill health, the only statutory ground for getting an absentee ballot. The group filed an action in the district court alleging the South Carolina statute denied them their constitutional rights to vote and travel. The court granted the plaintiffs a temporary restraining order allowing them to vote in the 1972 primary. The 1975 amendments to the state statute mooted the plaintiffs' case. The plaintiffs petitioned for attorney's fees. The court did not award fees because the temporary relief was not a ruling on the merits.

ble in some manner.") *and Nunes-Correia v. Haig,* 543 F.Supp. 812, 817 (D.D.C.1982) (Fed. R.Civ.P. 37 "substantial justification" standard may be satisfied more easily than the section 2412 "substantially justified" standard).

(3) Whether the United States is liable for fees when it engages in activity that, if carried on by state officials, would subject it to liability under 42 U.S.C. § 1983? *Compare Lauritzen v. Secretary of Navy,* 546 F.Supp. 1221 (C.D.Cal.

1982) (yes) *and Premachandra v. Mitts,* 548 F.Supp. 117 (E.D.Mo.1982) (yes) *with United States v. Miscellaneous Pornographic Magazines,* 541 F.Supp. 122 (N.D.Ill.1982) (no).

4. Though *Bly* discussed an award under the Voting Rights Act, 42 U.S.C. § 1973*l*(e), section 1988 is patterned after section 1973*l*(e). *Hanrahan,* 446 U.S. at 758 n. 4, 100 S.Ct. at 1989 n. 4.

Likewise, in *Rico-Sorio,* the court's temporary restraining order and departure date renewal did not determine any of the merits of this case. *Cf. Williams v. Alioto,* 625 F.2d 845, 847–48 (9th Cir.1980), *cert. denied,* 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981) (case dismissed as moot after injunction granted; fees awarded). The broad language of some cases does tend to support OLS's position. For example, in *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 722 n. 28, 94 S.Ct. 2006, 2022 n. 28, 40 L.Ed.2d 476 (1974), the Court stated: "the entry of any order that determines substantial rights of the parties may be an appropriate occasion upon which to consider the propriety of an award of counsel fees . . . ." But even in *Bradley,* the plaintiffs had established the liability of the opposing party. The court had just not yet entered final remedial orders. The same is true for cases in this circuit. In each instance where the court awarded fees, the plaintiffs prevailed on the merits.[5] *E.g., Manhart v. City of Los Angeles, Department of Water & Power,* 652 F.2d 904 (9th Cir.1981), *petition for cert. filed,* 51 U.S.L.W. 3022 (U.S. Jan. 22, 1982) (No. 81–1399) (injunction granted); *Southeast Legal Defense Group v. Adams,* 657 F.2d 1118 (9th Cir.1981) (injunction granted); *Williams, supra,* 625 F.2d 845 (injunction granted); *Lauriten v. Secretary of the Navy,* 546 F.Supp. 1221 (C.D.Cal.1982) (injunction granted; fees awarded under section 2412(b)); *Hoang Ha v. Schweiker,* 541 F.Supp. 711 (N.D.Cal.1982) (injunction granted; fees awarded under section 2412(d)(1)(A)); *Capps v. Atiyeh,* 495 F.Supp. 802 (D.Or.1980), *vacated and remanded,* 652 F.2d 823 (9th Cir.1981) (per curiam order) (injunction granted). Therefore, the petition is denied.

IT IS SO ORDERED.

---

**5.** Despite losing on the merits, Rico-Sorio could still be a "prevailing party" if his lawsuit caused INS to comply with some of the relief he sought. *Besig v. Dolphin Boating & Swimming Club,* 683 F.2d 1271, 1278 (9th Cir.1982); *Bartholomew v. Watson,* 665 F.2d 910, 914 (9th Cir.1982); *American Constitutional Party v. Munro,* 650 F.2d 184, 188 (9th Cir.1981); *Lauritzen, supra,* 546 F.Supp. at 1226. The court's renewal of Rico-Sorio's voluntary departure date extension gave INS the opportunity to allow him to stay in the country while INS processed his visa petition. INS declined to grant a further extension. Consequently, Rico-Sorio's lawsuit did not play a "catalytic role" producing extrajudicial action on the merits of his request. *American Constitutional Party,* 650 F.2d at 188.