[No. B008453. Second Dist., Div. Seven. Aug. 30, 1985.]

COALITION FOR ECONOMIC SURVIVAL et al.,
Plaintiffs and Respondents, v.
GEORGE DEUKMEJIAN, as Governor, etc., et al.,
Defendants and Appellants.

**COUNSEL**

John K. Van de Kamp, Attorney General, Thomas E. Warriner and Charlton Holland, Assistant Attorneys General, Anne S. Pressman and Henry Torres, Jr., Deputy Attorneys General, for Defendants and Appellants.

Richard A. Rothschild, Carmen Estrada, Melinda Bird, Lew Hollman, James Rutkowski and James Carroll for Plaintiffs and Respondents.

**OPINION**

**THOMPSON, J.**—In this case, the appellants challenge the trial court's award of attorneys' fees to the respondents' counsel for legal services pro-

vided the respondents. Three central issues are raised on appeal. First, do the budget act restrictions on the state's award of attorneys' fees apply to awards granted pursuant to 42 United States Code section 1988. Second, were the respondents "prevailing parties" within the meaning of 42 United States Code section 1988. Finally, were the respondents entitled to attorneys' fees pursuant to Code of Civil Procedure section 1021.5. We find that the first two issues are dispositive that the respondents were properly awarded attorneys' fees in the case at bar, and that it is unnecessary to reach the third issue.

## I. STATEMENT OF FACTS AND PROCEEDINGS BELOW

This case arose in the midst of a budget impasse that occurred in June and July of 1983. Because of this impasse, the State of California entered the 1983 fiscal year without having enacted a state budget. In the absence of a budget, there was no formal appropriation in effect for aid for families with dependent children (AFDC) payments.[1] The Department of Social Services informed all county welfare directors no funds would be released unless a budget act was enacted. In order for eligible recipients to receive their July 15th payment, the budget had to be enacted by July 13.

On July 11, 1983, the respondents filed suit seeking declaratory and injunctive relief and also filed a motion for a temporary restraining order. In requesting injunctive relief, the respondents sought to require the appellants to pay AFDC funds from the state's general revenue until the state budget was enacted.

On the same date, the trial court denied the respondents' motion for a temporary restraining order and the court scheduled a preliminary injunction hearing for July 14, 1983. As a result of the trial court's denial of their request for a temporary restraining order, the respondents filed a petition for writ of mandamus and temporary stay order with the California Supreme Court.

On July 14, 1983, the Supreme Court issued an interim stay. The court ordered the appellants to refrain from withholding any and all AFDC benefits which are due. The state payments to the counties went out immediately and the AFDC checks were issued.

---

[1] AFDC is a public assistance program with shared financial participation between federal, state, and county governments. Primary administration of the program is delegated to the participating states. The counties are the agencies which distribute AFDC benefits to eligible recipients.

On July 21, 1983, the budget act was signed into law. The AFDC appropriation was included. On August 10, 1983, the Supreme Court dismissed the respondents' mandate petition as moot.

On October 28, 1983, the respondents filed a motion for attorneys' fees based on the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988) and Code of Civil Procedure section 1021.5.

The trial court heard the respondents' motion on December 8, 1983. The court ruled the respondents were entitled to fees under 42 United States Code section 1988 and Code of Civil Procedure section 1021.5. The court reserved jurisdiction to determine the amount of the award on a later date.

On or about June 29, 1984, the parties stipulated that the trial court proceedings may be dismissed as moot and the reasonable value of services rendered by respondents' counsel in this case from the beginning of the litigation through December 9, 1983, was $24,935. The appellants reserved the right to appeal the judgment awarding attorneys' fees to respondents' counsel but agreed not to challenge the reasonable value of these services.

On July 2, 1984, a judgment pursuant to stipulation was filed dismissing the case as moot and awarding the respondents' attorneys' fees in the amount previously stipulated to.

On July 13, 1984, the appellants filed a notice of appeal of the award of attorneys' fees.

■ II. THE BUDGET ACT RESTRICTIONS ON THE STATE'S PAYMENT OF ATTORNEYS' FEES AWARDS DOES NOT APPLY TO AWARDS PURSUANT TO 42 UNITED STATES CODE SECTION 1988 AND THUS THE RESPONDENTS CAN RECOVER THE FULL AMOUNT OF THE FEES STIPULATED TO

The appellants argue budgetary limitations on awards of attorneys' fees apply to awards of attorneys' fees under 42 United States Code section 1988 and the award granted the respondents exceeds these limitations. A similar argument was recently addressed in *Green* v. *Obledo* (1984) 161 Cal.App.3d 678 [207 Cal.Rptr. 830], and rejected by that court. We find the reasoning of this case persuasive.

In *Obledo,* the plaintiffs invalidated a state welfare regulation. The plaintiffs were awarded $34,439 in attorneys' fees. The plaintiffs, however, were denied enforcement of this award of attorneys' fees because the trial court held the payment was precluded by restrictions in the state budget act. The

plaintiffs had sought enforcement pursuant to 42 United States Code section 1988.

In contending enforcement had been properly denied, the defendants relied, in part, on Item 9810-001-001 of the Budget Act of 1982.[2] Item 9810-001-001 provides in relevant part: "For payment of attorney fee claims, settlements, compromises, and judgments against the state, its officers, and officers and employees of state agencies, departments, boards, bureaus or commissions, supported from the General Fund, *but only pursuant to the provisions of Code of Civil Procedure Section 1021.5, the 'private attorney general' doctrine, or the 'substantial benefit' doctrine* . . . . 2. Expenditure from this item shall not exceed an hourly rate which equals the rate charged by the Attorney General of the State of California at the time the warrant is issued or at the time judgment is entered, whichever is earlier." (Italics added.) The defendants analogized a 1983 action to one brought as a "private attorney general" thus bringing the action within one of the specified limitations.

The court rejected this argument. The court reasoned the limitations specified in Item 9810-001-001, by its own terms, apply to attorneys' fees awarded under one statutory basis (Code Civ. Proc., § 1021.5) and two common law bases ("private attorney general" and "substantial benefit"). If the Legislature had intended to include 42 United States Code section 1988, it would have specified it as it had specified section 1021.5. As the court stated: "If the term ' "private attorney general" doctrine' were to subsume analogous statutory authorizations for the payment of fees, there would be no need to separately specify Code of Civil Procedure section 1021.5, as the item does, for it is such. (*Woodland Hills* [*Resident Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917], 933 [154 Cal.Rptr. 503, 593 P.2d 200].)" (*Green* v. *Obledo, supra,* 161 Cal.App.3d 678, 685.) The court also looked to another provision in the Budget Act which reinforced the court's interpretation. Section 4.50 of the Budget Act provided: "No funds appropriated by this act may be used to pay court-awarded attorney's fees *unless* payment of such fees is either: (a) Specifically authorized and set forth in an item or section of this act; or (b) *Expressly authorized by a statutory provision other than Section 1021.5 of the Code of Civil Procedure.*" (Italics added.) Thus, pursuant to this provision, if an attorneys' fee award is authorized by a statutory provision other than Code of Civil Procedure section 1021.5, express authorization for the payment of such attorneys' fees in an appropriation item is not required. 42 United States Code section 1988 is such a statutory provision. (*Green* v. *Obledo, supra,* 161

---

[2]Similarly worded limitations have been provided in subsequent budget acts. (See Item number 9810-001-001 in Stats. 1983, ch. 324, § 2; Stats. 1984, ch. 258, § 2.)

Cal.App.3d at pp. 685-686, fn. 8.) By not requiring the payment of all court-awarded attorneys' fees to be specifically authorized and set forth in the Budget Act, the Legislature must have recognized some court-awarded attorney's fees would not be subject to the limitations of item 9810-001-001. Section 4.50 thus strengthens the position that the Legislature was aware it was excluding statutory fee provisions other than Code of Civil Procedure section 1021.5 from the restrictions of item 9810-001-001 and did not intend for such statutory provisions, including 42 United States Code section 1988, to be brought within the confines of item 9810-001-001 even if they were codifications of the "private attorney general" theory.

The appellant in the case at bar argues *Obledo* was wrongly decided. In essence the appellant argues there has been no uncodified private attorney general fee awards under federal common law since *Alyeska Pipeline Service Co.* v. *Wilderness Society* (1975) 421 U.S. 240, 269 [44 L.Ed.2d 141, 159-160, 95 S.Ct. 1612], and no California common law counterpart since the enactment of Code of Civil Procedure section 1021.5. Thus, the appellant argues, the Legislature's reference to "private attorney general doctrine" must refer to the codification of that doctrine. However, under this interpretation, there would have been no reason for the Legislature to specify section 1021.5—it would have been subsumed by the common law label. Moreover, the codification of the California private attorney general doctrine, section 1021.5, did not eliminate the judiciary's nonstatutory equitable authority to award fees under the private attorney general doctrine. (See *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 930 [154 Cal.Rptr. 503, 593 P.2d 200]; *People* ex rel. *Cooper* v. *Mitchell Brothers' Santa Ana Theater* (1985) 165 Cal.App.3d 378, 386 [211 Cal.Rptr. 501]; Attorney's Fees Award Practice (Cont.Ed.Bar 1982) § 3.3 et seq.)[3]

III. THE RESPONDENTS ARE ENTITLED TO ATTORNEYS' FEES UNDER 42 UNITED STATES CODE SECTION 1988

The appellants contend that respondents are not entitled to attorneys' fees under 42 United States Code section 1988 because they were not prevailing parties in the underlying dispute.[4] We disagree.

---

[3]Since we conclude the state Budget Acts do not impose restrictions upon the payment of fees under 42 United States Code section 1988, we need not reach the issue whether the federal supremacy clause would preempt the restrictions imposed under these Acts even if applicable since these restrictions would conflict with federal law under section 1988.

[4]The respondents argue that since the appellants failed to raise this theory in the trial court below, it cannot now be raised for the first time on appeal. Although as a general rule this is correct, where, as in the case at bar, "a question of law only is presented on the facts appearing in the record the change in theory may be permitted." (*Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 341 [303 P.2d 738]; accord *Frink* v. *Prod* (1982) 31 Cal.3d 166, 170 [181 Cal.Rptr. 893, 643 P.2d 476].)

42 United States Code section 1988 provides in relevant part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Courts have formulated different standards for determining whether a party is a prevailing party entitled to fees depending on the factual context of the case. ■ For instance, when a plaintiff has obtained judicial relief on some but not all of his claims, that plaintiff is said to be a prevailing party if he has succeeded " 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " (*Hensley* v. *Eckerhart* (1983) 461 U.S. 424, 433 [76 L.Ed.2d 40, 50, 103 S.Ct. 1933], quoting *Nadeau* v. *Helgemoe* (1st Cir. 1978) 581 F.2d 275, 278-279.) When a plaintiff's suit has not resulted in a formal judgment in his favor but has brought about action outside of the courtroom which affords the party the sought after relief, that plaintiff is said to be a prevailing party when "(1) . . . his suit was a 'necessary and important factor in achieving the improvements'; and (2) . . . the suit was not ' "frivolous, unreasonable, or groundless." ' [Citations.]" (*Coalition For Basic Human Needs* v. *King* (1st Cir. 1982) 691 F.2d 597, 599; but see *Bonnes* v. *Long* (4th Cir. 1979) 599 F.2d 1316, cert. den., 455 U.S. 961 [71 L.Ed.2d 681, 102 S.Ct. 1476], as discussed in *Fitzharris* v. *Wolff* (9th Cir. 1983) 702 F.2d 836, 838.) ■ We believe a plaintiff should also be said to be a prevailing party when a court decision is made which has the practical *effect* of giving the plaintiff a substantial amount of the relief sought and the factual posture of the case at the time of the decision is such that it is reasonably probable the decision rendered will be the final decision although it may not be in the form of a final decision or even reach the merits. Such is the case before us.

In the case at bar, because of a budget impasse, the state entered the 1983 fiscal year without having enacted a state budget. As a result, no appropriation was in place for the distribution of funds under the AFDC program. On July 11, 1983, the respondents filed suit seeking in large measure injunctive relief requiring the appellants to pay the AFDC funds from the general revenue until the state budget was enacted. On this same date, the superior court refused to grant a temporary restraining order. The respondents immediately filed a petition for writ of mandamus and temporary stay order in the California Supreme Court. On July 14, 1983, the Supreme Court granted an interim stay requiring the appellants to make the AFDC payments. The court did not reach the merits of the respondents' claims.[5]

---

[5]The respondents contend that the court reached the merits of their claims when it issued its stay order. We disagree. In respondents' own papers filed with they court, they sought a stay pursuant to Code of Civil Procedure section 923. The purpose of such a stay is to

The budget was passed on July 21, 1983, and the suit was subsequently dismissed as moot. However, while the suit itself may have been dismissed without the court examining the merits of the respondents' claims, the respondents received essentially all the relief sought in bringing the action. Millions of dollars in payments were made to eligible recipients prior to the enactment of the budget. Moreover, it is not disputed by the appellants that had the respondents not brought the suit, these payments would have been delayed. Thus, although we recognize the stay granted by the Supreme Court was not a decision on the merits, this decision had the effect of a final decision—it gave the plaintiffs a substantial amount of the ultimate relief they requested. Moreover, the factual context of the case was such that it was reasonably probable at the time the stay was granted that this decision would constitute the final decision and the merits of the dispute would not be reached.

*Coalition for Basic Human Needs* v. *King, supra,* 691 F.2d 597, is a case which is strikingly similar to the case at bar. In *King,* a budget impasse in the Massachusetts Legislature cut off funding to state welfare recipients. The appellants brought suit to compel the appellees to resume payments. The district court denied the appellants' motion for a temporary restraining order. The appellate court granted the appellants an injunction pending appeal which required the appellees to resume payments. However, before the injunction took effect, the Legislature passed a complete budget, foregoing any delays in welfare recipients' receipt of their payments and mooting the case. The appellants sought attorney's fees under 42 United States Code section 1988. This was denied by the district court. The appellate court reversed.

The appellate court recognized that ordinarily preliminary relief such as a temporary restraining order or an injunction pending appeal is not sufficient to justify an award of attorney's fees. However, the court recognized the case before it was unique and thus did not fall within this general rule. The court discussed three reasons for this conclusion. First, the object of the appellants' suit was to provide relief until the budget passed—to "tide the recipients over until the budget was passed and regular checks once more arrived." (*Coalition for Basic Human Needs* v. *King, supra,* 691 F.2d at p. 601.) Thus, the appellants only sought temporary and provisional relief. Second, the court was aware that "as a practical matter, its decision on the injunction pending appeal was a 'final' decision—that it would require the state to release millions of dollars to welfare recipients before the

preserve the status quo and to protect a court's jurisdiction. The merits are not reached. (See *People* ex rel. *S.F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533, 537-539 [72 Cal.Rptr. 790, 446 P.2d 790]; *Voorhies* v. *Greene* (1983) 139 Cal.App.3d 989, 995-996 [189 Cal.Rptr. 132].)

legislature passed a final budget." (*Ibid.*) Third, in granting the injunction pending appeal, the court had considered the appellants' legal claims and had determined it was " 'likely to succeed' " on its statutory claim. (*Ibid.*)

In the case at bar, the object of the respondents' suit, as in *King*, was simply to provide relief until the budget passed. The object thus was to obtain temporary relief only. This was entirely realized. It is well worth noting, in this case, unlike *King*, millions of dollars in AFDC payments *were actually made* as a result of the Supreme Court stay. In *King*, no payments were made because of the injunction since the Legislature passed a budget six hours after the court decision. Furthermore, in the case at bar, the court's decision to grant the stay as a practical matter was a final decision. We, of course, recognize one of the reasons for the decision in *King* to award attorney's fees was the court had preliminarily determined the merits of the appellant's claims. However, we do not believe the failure of the Supreme Court to reach the merits in the case before us compels us to reach a different conclusion. For us to hold the respondents are not prevailing parties when their suit resulted in millions of dollars of payments to be made, i.e., their entire request for relief to be realized, and the posture of the suit was such that it was reasonably probable at the time the stay was issued that the case would go no further, would be to exalt legal formalism while ignoring the reality of the situation.

The appellants contend, however, the respondents are not entitled to relief since the Supreme Court's stay simply had the effect of maintaining the status quo and was not an adjudication on the merits of the respondent's claims. The appellants rely on *Bly* v. *McLeod* (4th Cir. 1979) 605 F.2d 134, cert. den., 445 U.S. 928 [63 L.Ed.2d 761, 100 S.Ct. 1315]; *Hanrahan* v. *Hampton* (1980) 446 U.S. 754 [64 L.Ed.2d 670, 100 S.Ct. 1987], and *Rico-Sorio* v. *U.S.I.N.S.* (D.Ore. 1982) 552 F.Supp. 965.

In *Bly*, a group of chemistry professors planned to be out of the state at the time of the 1972 Democratic primary because of a professional convention. They applied for absentee ballots to enable them to vote in the Democratic primary. Their applications were denied since they were not qualified under the relevant absentee ballot statute to receive an absentee ballot given their reason for being unable to vote on election day. The plaintiffs filed a class action alleging this denial violated their constitutional rights to vote and travel. They requested and received a temporary restraining order which enabled the professors to vote in the upcoming election. Before any decision was reached on the merits of the plaintiffs' claims, the absentee voting statute was amended. Such amendment henceforth enabled voters such as the plaintiffs to vote absentee when they would be out of their place

of registration due to employment or due to being part of certain professions. This amendment effectively mooted the case.

The plaintiffs subsequently sought attorney's fees. The district court held the plaintiffs were prevailing parties entitled to fees. The court based this ruling in part on the fact the plaintiffs had been granted the temporary restraining order allowing them to vote in the 1972 primary. (*Bly* v. *McLeod, supra,* 605 F.2d at p. 137.)

The appellate court reversed, however, holding the grant of the temporary restraining order did not constitute an adjudication on the merits of the plaintiffs' claims but merely preserved the status quo and as such the plaintiffs were not prevailing parties. (*Ibid.*)

*Bly* is distinguishable from the case at bar on two important grounds. First, the plaintiffs, by the grant of the temporary restraining order, did not receive a substantial amount of the relief they sought. This was a *class action* asking the absentee regulations be declared unconstitutional. The temporary restraining order merely allowed the professors to vote in a single election—only a small portion of the remedy sought. Second, there was no indication at the time the relief was granted the Legislature would soon act to change the existing statute. Thus, it was not reasonably probable at the time the court granted the temporary restraining order that this relief, although preliminary in form, would in fact constitute final relief. It was truly only an interlocutory order preserving the status quo until future ruling on the merits.[6]

In *Hanrahan* v. *Hampton, supra,* 446 U.S. 754, the respondents brought suit alleging their constitutional rights had been violated by the petitioners and seeking money damages. The trial court directed verdicts for the petitioners but the appellate court reversed. The appellate court also awarded the respondents attorney's fees for the costs on appeal of the directed verdict under 42 United States Code section 1988. The Supreme Court found this award to be improper. After examining the statute and the legislative history of the statute, the court agreed it was Congress' intent that a party be awarded fees pendente lite in some cases. However, the court held a party is entitled to such an interlocutory award only when that party "has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal." (*Id.,* at p. 757 [64 L.Ed.2d at p. 674].)

---

[6]We think this latter factor also distinguishes other cases in which even though a party was granted preliminary relief which turned out to be a final decision providing the party all the relief sought, he was not deemed to be a prevailing party. (See *Smith* v. *Thomas* (5th Cir. 1982) 687 F.2d 113, sub. opn. (5th Cir. 1984) 725 F.2d 354; *Laurenzo By Laurenzo* v. *Miss. H.S. Activ. Ass'n* (5th Cir. 1983) 708 F.2d 1038; *Paragould Music Co.* v. *City of Paragould, Ark* (8th Cir. 1984) 738 F.2d 973.)

*Hanrahan* is likewise distinguishable from the case before us. In *Hanrahan,* the appellate court decision merely entitled the respondents to a trial of their cause. The decision gave the respondents none of the relief sought when they originally filed suit. The case was still to be tried. As the Supreme Court stated, "they are in a position no different from that they would have occupied if they had simply defeated the defendants' motion for a directed verdict in the trial court." (446 U.S. at pp. 758-759 [64 L.Ed.2d at p. 675].) However, in the case at bar, the respondents did not seek fees pendente lite. They sought fees after they had been given all the relief requested, and although the decision may have been interlocutory in form, it was in fact the final decision on the matter. This was not a case in which the court had made mere procedural or evidentiary rulings with the final decision on the merits yet to be decided. (See *Bly* v. *McLeod, supra,* 605 F.2d at p. 137; *Swietlowich* v. *County of Bucks* (3d Cir. 1980) 620 F.2d 33.)

In *Rico-Sorio* v. *U.S.I.N.S., supra,* 552 F.Supp. 965, the petitioner brought a suit against the defendant to halt the defendant from deporting him until the defendant had processed his visa petition and application. The trial court granted a temporary order restraining the Immigration and Naturalization Service (INS) from deporting the petitioner. The trial court subsequently denied the petitioner's request for injunctive relief and simply renewed the INS' previous voluntary departure extension. He was subsequently deported before the defendant processed his visa petition and application. The petitioner's attorneys nevertheless sought fees and costs pursuant to the Equal Access to Justice Act (28 U.S.C. § 2412).

The trial court denied the attorney's request because it concluded the petitioner was not a prevailing party within the meaning of the act. By granting the petitioner a temporary restraining order, the court merely preserved the status quo. The court subsequently ruled against the petitioner on the merits of his claim. (*Rico-Sorio* v. *U.S.I.N.S., supra,* 552 F.Supp. at p. 968.)

In *Rico-Sorio,* unlike the case at bar, the court did not grant the petitioner the relief sought. Although the order of the court may have given the petitioner a temporary reprieve from deportation, the court subsequently denied him what he brought the suit to obtain—injunctive relief requiring the INS to extend his departure date until it had processed his visa petition and application. He was instead deported. This is hardly comparable to what occurred in the case at bar. Moreover, *Rico-Sorio* was not a case in which it was reasonably probable at the time the temporary restraining order was granted that it would constitute the final decision on the matter. We thus find *Rico-Sorio* readily distinguishable from the case at bar.

We also believe the legislative history of 42 United States Code section 1988 justifies our conclusion the respondents were prevailing parties in the case at bar.

The driving force behind the enactment of section 1988 was the concern that without such an attorneys' fee provision private attorneys would not instigate suits to enforce civil rights laws because there would be little or no likelihood of a recovery which would cover their costs and attorneys' fees. As was stated in the Senate Report which accompanied 42 United States Code section 1988: "All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain. [¶] In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental law are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." (1976 U.S. Code Cong. & Admin. News, pp. 5908, 5910.) (See also *Hensley* v. *Eckerhart, supra,* 461 U.S. 424, 429 [76 L.Ed.2d 40, 48] ["The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances. H.R. Rep. No. 94-1558, p. 1 (1976)"]; *Zarcone* v. *Perry* (2d Cir. 1978) 581 F.2d 1039, 1041, cert. den., 439 U.S. 1072 [59 L.Ed.2d 38, 99 S.Ct. 843]; Percival & Miller, *The Role of Attorney Fee Shifting In Public Interest Litigation* (1984) 47 Law & Contp. Probs. 233, 239-241; *Newman* v. *Piggie Park Enterprises, Inc.* (1968) 390 U.S. 400, 402 [19 L.Ed.2d 1263, 1265-1266, 88 S.Ct. 964].) An attorneys' fee award not only serves to reimburse an attorney for his efforts in bringing a civil rights suit but also serves to encourage future litigation to enforce the civil rights laws. (*Perez* v. *University of Puerto Rico* (1st Cir. 1979) 600 F.2d 1, 2; *Schmid* v. *Lovette* (1984) 154 Cal.App.3d 466, 475 [201 Cal.Rptr. 424].) If fees are not awarded, private attorneys or public interest law firms would not be willing or able to undertake such suits.

In the case at bar, the respondents filed suit to vindicate what the appellants concede is a very important public interest—the timely receipt of public assistance to eligible individuals. It is unquestioned that, without the bringing of this action, the checks would have been delayed. *The suit accomplished the goal for which it was brought.* However, the recipients of this assistance were by definition not in a position to instigate such litigation on their own—they could not afford the costs such litigation entails. Moreover, the respondents' attorneys could not offer to undertake such litigation on a contingent fee basis. The goal in this suit, as in many suits of this

nature, was to receive injunctive relief—to prevent a future harm. There was not going to be a damage recovery. Thus, the only way that the attorneys who brought this suit could recover their attorneys' fees was to receive an award pursuant to statute. This was certainly the type of suit that 42 United States Code section 1988 was enacted to encourage. A suit of this nature very likely would not and could not be brought without the potential award of attorneys' fees. However, in this suit, as discussed in detail above, the type of relief sought, aside from being injunctive in nature, was temporary in duration. The respondents did not enter this case believing the Legislature was not going to pass a budget. The respondents could well have foreseen when they filed the action a final decision on the merits might not be reached before the crisis passed. Not to award attorneys' fees when such a clear public interest was served and such substantial benefits were realized simply because the nature of the suit was such that as a practical matter the merits of the matter were not reached—and predictably probably would not be reached—would only serve to discourage the bringing of such suits. This result is certainly not in keeping with the purpose behind section 1988. We believe the respondents are entitled to attorneys' fees pursuant to 42 United States Code section 1988.[7]

### DISPOSITION

The decision of the trial court is affirmed.

Lillie, P. J., and Aisenson, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied November 14, 1985.

---

[7]The respondents are also entitled to attorneys' fees for their time spent in protecting their fee award on appeal. (*Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 639 [186 Cal.Rptr. 754, 652 P.2d 985]; *Slayton* v. *Pomona Unified School Dist.* (1984) 161 Cal.App.3d 538, 553 [207 Cal.Rptr. 705]; *Schmid* v. *Lovette, supra,* 154 Cal.App.3d at pp. 479-480.)

*Assigned by the Chairperson of the Judicial Council.