**ILLINOIS COUNCIL ON LONG TERM CARE; Gilman Nursing Center, an Illinois limited partnership; Spring Valley Nursing Center, an Illinois limited partnership; and Woodside Manor, an Illinois corporation, Plaintiffs,**

v.

**Phillip BRADLEY, in his official capacity as Director of the Illinois Department of Public Aid; Dawn Clark Netsch, in her official capacity as Comptroller of the State of Illinois; and Patrick Quinn, in his official capacity as Treasurer of the State of Illinois, Defendants.**

No. 91 C 1666.

United States District Court,
N.D. Illinois, E.D.

March 29, 1991.

Richard F. Zehnle, Neal A. Crowley, Ann C. McKenzie, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for plaintiffs.

James C. O'Connell, Sp. Asst. Atty. Gen., Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiffs, Illinois Council on Long Term Care (a non-for-profit health care association representing over 150 proprietary Illinois nursing homes) and three nursing homes with at least 70% Medicaid recipients as residents, bring this action for declaratory and injunctive relief against the director of the Illinois Department of Pub-

lic Aid (IDPA), the state agency which administers the Illinois Medicaid program, and the Comptroller and Treasurer of the State of Illinois.

Plaintiffs seek preliminary injunctive relief claiming that the slowdown in IDPA's Medicaid reimbursements to nursing homes for care provided to Medicaid beneficiaries violates the federal Medicaid Act (the "Act"), Title 42, United States Code, Sections 1396a(a)(2), 1396a(a)(13)(A), and 1396a(a)(30)(A), and implementing regulations at 42 C.F.R. §§ 447.250–.257.

## BACKGROUND FACTS

Illinois participates in the Medicaid program, a cooperative federal-state program established by the Act under which federal matching funds are provided to states to furnish medical assistance to persons "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396. IDPA administers and supervises the Illinois Medicaid program pursuant to § 1396a(a)(5) and Ill.Rev.Stat. ch. 23, § 1–1 *et seq.* Plaintiff Illinois Council on Long Term Care has a membership comprised of 150 proprietary Illinois nursing homes. Most of the Council's members, including the three plaintiff nursing homes, participate in the Illinois Medicaid program.

Under 42 U.S.C. § 1396a, a state becomes eligible to participate in the Medicaid program, and to receive federal matching funds, by submitting to the Secretary of Health and Human Services (HHS) (the "Secretary") a State Medicaid Plan that meets the federal standards prescribed in the Act and its implementing regulations, and by having the plan approved by the Secretary. A state plan for medical assistance must provide for financial participation by the state on a basis "which will assure that the lack of adequate funds from local sources will not result in lowering the amount, duration, scope, or quality of care and services available under the plan." 42 U.S.C. § 1396a(a)(2).

As of October 1, 1981, the Act requires a state plan to provide for payment at rates "which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards...." 42 U.S.C. § 1396a(a)(13)(A).

Section 1396a(a)(30) requires that state plans "provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan ... as may be necessary ... to assure that payments are consistent with efficiency, economy, and quality of care."

A Medicaid agency must pay for long term care services using rates determined in accordance with methods and standards specified in an approved state plan. 42 C.F.R. § 447.253(g).

When a Medicaid agency makes a change in its "payment methods and standards," but not less often than annually, the agency must provide assurances and make findings that "the agency pays for ... long-term care facility services through the use of rates that are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated providers to provide services in conformity with applicable State and Federal laws, regulations, and quality and safety standards." 42 C.F.R. § 447.253(a), (b).

The IDPA has established monthly billing cycles. Historically, IDPA has had a median delay of approximately 30 days from the time services are rendered to the commencement of the processing of claims, and another 30 days delay before reimbursement is made to the providers. Plaintiffs claim that this 60 day delay in reimbursement from the date services are provided reflects the intention of the state plan and the expectations of the nursing homes. In fiscal years 1989 and 1990, however, the delay after presentation of claims to IDPA increased from 30 days to approximately 40 days. The delays expanded again in fiscal 1991: Payments for November, 1990 services were made between 80 and 90 days after presentation of the in-

voice, and, on March 21, 1991, payment was received for certain services rendered through December 6, 1990. As of the date of this opinion, March 29, 1991, no payments had been received by any nursing homes for any services rendered after December 6, 1990.

## DISCUSSION

■ To support the issuance of a preliminary injunction, a plaintiff must demonstrate: (1) a reasonable likelihood of success on the merits; (2) the inadequacy of a remedy at law; (3) the existence of irreparable harm without the injunction; (4) that the threat of harm to the plaintiff outweighs any harm to the defendant if the injunction were issued; (5) that the public interest would not be disserved if the injunction were granted. *Kellas v. Lane*, 923 F.2d 492, 493 (7th Cir.1990). Though the plaintiff must satisfy each of these elements to prevail, his threshold burden is to show the first three factors. *Id.* Only when this burden is met does the inquiry become a "sliding scale" analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits. *Id.*

■ In order to establish a reasonable likelihood of success on the merits, the plaintiff need only show that his chances are better than negligible. *Id.* The court, having considered the evidence presented at the evidentiary hearing held on March 28, 1991, finds that plaintiffs have not met this standard.

Plaintiffs allege that the delay of Medicaid reimbursement payments violate various provisions of 42 U.S.C. § 1396a(a)—namely, §§ 1396a(a)(13)(A), 1396a(a)(30)(A), and 1396a(a)(2). The provisions of § 1396a(a) set forth the requirements of state plans for medical assistance. The Secretary will approve state plans which fulfill the conditions specified in § 1396a(a). 42 U.S.C. § 1396a(b). It is undisputed that the Illinois State Medicaid Plan (the "State Plan") has been approved by the Secretary. The only provision in the State Plan concerning timeliness of payments for services rendered by providers is § 4.19(e). It states that "[t]he Medicaid agency [IDPA] meets all requirements of 42 C.F.R. 447.45 for timely payment of claims." (Exhibit E, Illinois State Medicaid Plan, p. 61.) That federal regulation requires IDPA to pay all claims within twelve months of the date of receipt of the claim. 42 C.F.R. § 447.45(d)(4).

In evaluating the State Plan pursuant to 42 U.S.C. § 1396a(b), the Secretary was required to evaluate the State Plan in light of the requirements of 42 U.S.C. § 1396a(a). The subsequent approval of the State Plan signifies the Secretary's finding that the sole timeliness provision in § 4.19(e) adequately addresses any timeliness concerns raised by § 1396a(a). For example, the Secretary's approval of the State Plan demonstrates that the directive of 42 U.S.C. § 1396a(a)(13)(A)—that the plan provide for payments through the use of rates which are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities—is satisfied by the State Plan. Also, approval indicates that the Secretary found that the State Plan, including the § 4.19(e) timeliness provision, adequately "provide[s] such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan ... as may be necessary ... to assure that payments are consistent with efficiency, economy, and quality of care," as required by § 1396a(a)(30)(A). Finally, the Secretary's approval demonstrates that the State Plan provides for financial participation by the state on a basis "which will assure that the lack of adequate funds from local sources will not result in lowering the amount, duration, scope, or quality of care and services available under the plan," as required by 42 U.S.C. § 1396a(a)(2).[1] Thus, by giving its impri-

---

1. Defendants claim that § 1396a(a)(2) does not apply to Illinois since the Illinois Medicaid program is administered on a state basis, and not a county basis. Thus, "the lack of adequate funds from local sources" is not relevant to the Illinois Plan. The court need not address this issue since the court finds that, in any event, defendants have not violated § 1396a(a)(2).

matur to the State Plan, the Secretary has made a finding that a delay in payments of up to twelve months, as permitted by the State Plan, does not contravene the provisions of § 1396a(a). *See Wisconsin Hospital Ass'n v. Reivitz*, 733 F.2d 1226, 1237 (7th Cir.1984) (determination by Secretary of the reasonableness and adequacy of rates provides major guidance to the district court). By approving the State Plan, the Secretary consented to the manner in which the State of Illinois and the Medicaid providers in Illinois are to share the risk of nontimely payment, with the Illinois providers responsible for financing the first twelve months and the State of Illinois responsible for any delays thereafter.

As stated above, it is the State Plan which must comply with 42 U.S.C. § 1396a(a), and not the "practices," "intentions," or "expectations" of the agency and the providers.[2] Plaintiffs' allegations of a slowdown simply constitute a change in practice by IDPA. A new practice, even one that imposes great hardships on Medicaid providers, that does not violate the provisions of the State Plan cannot, by itself, cause the Plan to contravene the federal requirements with which the Plan has been found to comply.

Plaintiffs contend that, by paying in a slower manner than was previously the practice of IDPA, the agency has violated 42 C.F.R. § 447.253(a) and (b). These sections require a Medicaid agency, such as IDPA, to provide assurances and make findings in order to receive HHS approval of a state plan change. The primary finding that the agency must make is that the amended plan continues to comply with the mandates of § 1396a(a)(13)(A), i.e., that the plan's rates are "reasonable and adequate." 42 C.F.R. § 447.253(b)(1)(i).

An agency does not encounter the requirements of 42 C.F.R. § 447.253(a) and (b) unless a change has been made to the state plan's "methods and standards." Throughout this subpart of the federal reg-

ulations, the term "methods and standards" relates to payment rates. *See* 42 C.F.R. § 447.252(b) ("the methods and standards used by the agency to set payment rates"); § 447.253(f) ("significant changes to its methods or standards for setting payment rates"); § 447.253(g) ("using rates determined in accordance with methods and standards specified in an approved State plan"). The provision of the Medicaid Act implemented by this subpart, 42 U.S.C. § 1396a(a)(13)(A), requires "the use of rates (determined in accordance with methods and standards developed by the State)." Thus, unless the IDPA slowdown amounts to a change in the "methods and standards" of payment rates, IDPA is not required to make the assurances and findings specified in 42 C.F.R. § 447.253(a) and (b).

Plaintiffs equate delayed payments with reduced payments, which would constitute a change of rates under the State Plan. However, plaintiffs cite no authority for this position. Most of the cases cited by plaintiff pertain to actual rate changes. The remainder involve rate freezes. None of the cases concern delays in reimbursement without alleging that the actual payment rates used by the state agency are different from those set out in the state plan. Plaintiffs make two arguments to equate the slowdown to a rate reduction. First, plaintiffs claim that the slowdown is tantamount to a decision by the IDPA to make no payments for November and half of December, 1990. Second, plaintiffs try to equate the slowdown to a rate reduction of 12.5 percent for 1990. Both of these positions would be correct if IDPA had taken the posture that no reimbursement for services rendered during that one and a half month period would be forthcoming. However, the circumstances are to the contrary. IDPA has not denied liability for that period, and has stated that it plans to reimburse plaintiffs for that period at the rates and in the time frame set forth by the

---

**2.** Plaintiffs argue that "[m]onthly payment of Medicaid reimbursement rates ... has been the consistent *practice* of the IDPA under its state plan," and "it is clear that the *intention* of the State and the *expectation* of the nursing homes is that the monthly bills will be paid on a regular basis, not to exceed sixty days from median date services are provided...." (Mem. in Support, p. 3., emphasis added).

State Plan. At this point, plaintiffs are unable to, and have no reason to, disprove this assertion. Thus, plaintiffs' attempts to equate delayed payment with reduced payment are unpersuasive.

The court finds that the payment slowdown is not inconsistent with the terms of the State Plan. Consequently, the slowdown does not constitute an amendment to the Plan and IDPA is not required to obtain approval from the Secretary through the submission of assurances and findings.[3]

For these reasons, the court finds that plaintiffs do not have a better than negligible likelihood of success on the merits of their claim. Where the plaintiff is unable to show likelihood of success on the merits, the harm to the plaintiff will never override this failure. *Curtis v. Thompson*, 840 F.2d 1291, 1296 (7th Cir.1988). Denial of an injunction for failure to establish such likelihood of success is appropriate and proper. *Id.* at 1297.

Although the court need not and therefore will not address the other requirements for the issuance of a preliminary injunction, the court is not unmindful of the necessity of adequate health care for those who qualify for Medicaid benefits and would once again encourage the parties to attempt to settle this dispute.

## CONCLUSION

Defendants' motion to dissolve the temporary restraining order dated March 20, 1991 is GRANTED. Plaintiffs' motion for a rule to show cause and motion for preliminary injunction are DENIED. The parties are encouraged to discuss settlement and report on the status thereof on May 3, 1991 at 10:30 a.m.

---

**3.** The methods and standards for establishing payment rates as set forth in the State Plan include a two month working capital component. (Exhibit E, Illinois State Medicaid Plan, Attachment 4.19–D, p. 12E.) Plaintiffs contend that the working capital component infers that reimbursements by IDPA must be made within sixty days of the date services are rendered in order for Medicaid providers to maintain proper working capital. The court disagrees. The working capital level provided in this section of the State Plan is for the purposes of calculating the capital cost component in establishing payment rates. A plain reading of this section in context does not persuade the court that the working capital component constitutes an indirect requirement that IDPA pay Medicaid claims within sixty days.