**Stephanie PRATT, et al., Plaintiffs,**

v.

**Pete WILSON, et al., Defendants.**

**No. Civ. S–90–896 DFL.**

United States District Court,
E.D. California.

July 12, 1991.

Lois Strain, Tulare–King Counties Legal Services, Visalia, Cal., Cindy A. Babby Smith, Legal Services of Northern California, Redding, Cal., Ilene J. Jacobs, California Rural Legal Assistance, Marysville, Cal., Robert D. Newman, Western Center on Law and Poverty, Inc., Los Angeles, Cal., Casey McKeever, Western Center on Law and Poverty, Inc., Sacramento, Cal., for plaintiffs.

Daniel E. Lungren, Atty. Gen., Dennis Eckhart, Supervising Deputy Atty. Gen., Barbara Haukedalen, Deputy Atty. Gen., Sacramento, Cal., for Governor, Treasurer, and Director of California Dept. of Social Services.

D. Robert Shuman, Richard J. Chivaro, Sacramento, Cal., for Gray Davis, State Controller.

## MEMORANDUM OF DECISION AND ORDER (AMENDED)

LEVI, District Judge.

This matter was heard on February 22, 1991, on plaintiffs' motion for summary judgment. The court requested supplemental briefing, which the parties supplied, and the matter was submitted on April 5, 1991. Plaintiffs are California residents who receive funds from the Aid to Families with Dependent Children ("AFDC") program. See 42 U.S.C. § 601–608. Plaintiffs challenge the defendants'[1] refusal to release funds for the AFDC program due to the budget impasse of July, 1990, and potential similar future incidents. Defendants contend that their actions taken during July, 1990, were compelled by two provisions of California law which prohibit them from distributing funds absent legislative authorization in the form of a budget. Plaintiffs contend that defendants' actions were contrary to the federal laws which govern the AFDC program. For the reasons discussed below, the court finds that plaintiffs are entitled to summary judgment and the declaratory relief which they seek. The court, however, presently declines to issue injunctive relief.

## I. BACKGROUND

California's current fiscal year began on July 1, 1990. On June 15, 1990, anticipating a budget impasse, the state Department of Social Services sent a letter to county welfare directors advising that the state would not release AFDC funds, either state or federal, after July 1 absent the

---

[1]. Defendant State Controller Gray Davis does not oppose plaintiffs' claims for relief. Thus the court's references to the "defendants" throughout this memorandum are not intended to apply to defendant Davis. The court's order, of course, applies equally to all defendants.

enactment of a budget. Exhibit A, Brief in Support of Plaintiffs' Motion for Summary Judgment. The letter noted that a delayed budget would not affect checks due to be issued on July 15 because the state traditionally authorizes these checks at the end of June. Defendants adopted this position because of certain provisions of state law, outlined *infra,* which in their view required them to halt AFDC payments absent legislative authorization in the form of a budget.[2]

Plaintiffs filed this action on July 12, 1990. On July 13, 1990, this court, by Garcia, J., issued a temporary restraining order (TRO), enjoining the defendants from withholding AFDC funds absent prior written notice to recipients, and certified the matter as a class action. On July 23, 1990, the court extended the TRO for an additional 10–day period, in accordance with the provisions of Fed.R.Civ.P. 65(b). On August 27, 1990, plaintiffs amended the complaint, seeking declaratory and injunctive relief for defendants' failure to make prompt AFDC payments in violation of 42 U.S.C. § 602(a)(10)(A), 45 C.F.R. § 206.-10(a)(5)(i), and 42 U.S.C. § 1983, and for defendants' failure to give timely notice of interruption of benefits in violation of 45 C.F.R. § 205.10(a)(4)(i) and (iii). On December 26, 1990, plaintiffs moved for summary judgment. Opposition and reply briefs were timely filed, and the matter was heard on February 8, 1991, at which time the court ordered supplemental briefing. Defendants' supplemental memorandum was filed on March 18, 1991. Plaintiffs'

supplemental brief was filed on March 29, 1991. On April 5, 1991, defendants replied to plaintiffs' supplemental memorandum.

### A. The AFDC Program

■ The federal government provides approximately half of the funding for the AFDC program, and the states and their political subdivisions provide the remaining funds. 42 U.S.C. § 602(a)(2);[3] Velasquez Declaration, ¶ 2. While state participation in the AFDC program is voluntary,[4] a state's election to participate obligates it to comply with the federal statutes and regulations which govern the program. *King v. Smith,* 392 U.S. 309, 316–17, 88 S.Ct. 2128, 2132–33, 20 L.Ed.2d 1118 (1968); *accord Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975). California participates in the AFDC program. Answer of Defendants Deukmejian, Hayes, and McMahan, ¶ 17; Answer of Defendant Davis, ¶ 1.

Federal law provides that "aid to families with dependent children shall ... be furnished with reasonable promptness to all eligible individuals...." 42 U.S.C. § 602(a)(10)(A). The regulations implementing the AFDC program further provide that benefits "shall be continued regularly to all eligible individuals until they are found to be ineligible." 45 C.F.R. § 206.-10(a)(5)(i). Participating states may not terminate, suspend, reduce, or discontinue benefits without giving recipients 10 days prior written notice. 42 U.S.C. § 602(a)(4);[5] 45 C.F.R. § 205.10(a)(4)(i)[6],

---

**2.** Defendants now dispute that it is their policy to suspend AFDC payments absent a budgetary appropriation, although no evidence has been offered in support of this assertion. *See* Statement of Disputed Material Facts as to Which There is a Genuine Issue Precluding Summary Judgment, ¶ 1. Given that most of the state's principal officers have changed since this litigation was initiated, it is possible that defendants' policy may have changed or may not yet be formulated. Nevertheless, the relevant state law has not changed, and the issue raised here is likely to present itself again.

**3.** 42 U.S.C. § 602(a)(2) provides that the "State plan for aid and services to needy families with children must ... provide for financial participation by the State."

**4.** 42 U.S.C. § 601 provides that the "sums made available under [the AFDC program] shall be used for making payments to States which have submitted, and had approved by the Board, State plans for aid and services to needy families with children."

**5.** 42 U.S.C. § 602(a)(4) provides that "[a] State plan for aid and services to needy families with children must—provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for aid to families with dependent children is denied or is not acted upon with reasonable promptness."

**6.** 45 C.F.R. § 205.10(a)(4)(i) provides: "In cases of intended action to discontinue, terminate, suspend or reduce assistance ... [t]he State or

(a)(4)(i)(A),[7] and (a)(4)(iii).[8]

### B. California Law

The California Constitution sets a June 15 deadline for adoption of the state's annual budget. Cal. Const. art. IV, § 12(c). In five of the last eight years the legislature has failed to meet this deadline. *See* 1983 Cal.Stat. ch. 324; 1987 Cal.Stat. ch. 135; 1988 Cal.Stat. ch. 313; 1989 Cal.Stat. ch. 93; 1990 Cal.Stat. ch. 467. The California Constitution, as well as a state statute, preclude the defendants from issuing funds absent legislative authorization. Cal. Const. art. XVI, § 7;[9] Cal.Gov't Code § 13340.[10]

### II. MOOTNESS

■ Defendants' opposition to the instant motion rests on their contention that this action does not present a justiciable case or controversy within the meaning of article III, § 2 of the United States Constitution. Defendants argue that the action is moot because the budget crisis of 1990 has passed and that no such crisis yet exists as to the 1991 budget.

■ Federal courts lack the power to decide legal questions in a vacuum. Courts may only determine matters which arise in the context of a genuine "case" or "controversy" within the meaning of article III. *SEC v. Medical Comm. for Human Rights,* 404 U.S. 403, 407, 92 S.Ct. 577, 579, 30 L.Ed.2d 560 (1972). The mootness doctrine bars federal courts from "decid[ing] arguments after events have put them to rest." *Doremus v. Board of Educ.,* 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952). The cessation of wrongful acts does not render an action moot, however, where the case is capable of repetition yet evading review. *See Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (reviewing the Supreme Court's development of the mootness doctrine and applying the "capable of repetition, yet evading review" exception); *Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911) (first announcing the "capable of repetition, yet evading review" exception).

■ A case is capable of repetition yet evading review, and therefore justiciable, when: "(1) the challenged action is of limited duration, too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Wiggins v. Rushen,* 760 F.2d 1009, 1011 (9th Cir.1985); *accord Globe Newspaper Co. v. Superior*

---

local agency shall give timely and adequate notice, except as provided for in paragraphs (a)(4)(ii), (iii) or (iv) of this section."

Paragraph (ii) allows the agency to dispense with the advance-notice requirement where the recipient: (A) has died; (B) no longer wishes assistance; (C) has been admitted or committed to an institution; (D) has been placed in skilled nursing care, intermediate care, or long-term hospitalization; (E) cannot be found; (F) has been accepted for assistance in a new jurisdiction; (G) loses custody of an AFDC child; (H) fails to supply a monthly report; (I) was notified at initiation of a special allowance for a specific period that the allowance would terminate at the period's end without further notice; or (J) fails to pay rent, leading to a presumption of mismanagement.

Paragraph (iii) is quoted *infra,* at note 8.

Paragraph (iv) allows a termination or reduction of benefits on five days notice where the administering agency verifies facts suggesting the recipient has acted fraudulently.

7. 45 C.F.R. § 205.10(a)(4)(i)(A) provides that " 'Timely' means that the notice is mailed at least 10 days before the date of [the] action, that is, the date upon which the action would become effective."

8. 45 C.F.R. § 205.10(a)(4)(iii) provides:

When changes in either State or Federal law require automatic grant adjustments for classes of recipients, timely notice of such grant adjustments shall be given which shall be "adequate" if it includes a statement of the intended action, the reasons for such intended action, a statement of the specific change in law requiring such action and a statement of the circumstances under which a hearing may be obtained and assistance continued.

9. Cal. Const. art. XVI, § 7, provides: "Money may be drawn from the Treasury only through an appropriation made by law and upon a Controller's duly drawn warrant."

10. Cal.Gov't Code § 13340 provides that: "On or after July 1, 1990, no moneys in any fund which, by any statute other than a Budget Act, is continuously appropriated without regard to fiscal years, may be encumbered unless the Legislature, by statute, specifies that the moneys in the fund are appropriated for encumbrance."

*Court,* 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982) (finding "capable of repetition, yet evading review" exception to mootness doctrine because repetition of court order excluding newspaper from courtroom during testimony of a minor victim of a sex offense "can reasonably be assumed ... and because criminal trials are typically of 'short duration' "); *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982); *Joint Bd. of Control of the Flathead v. United States,* 832 F.2d 1127, 1130 (9th Cir.1987). Defendants have the "heavy burden" of demonstrating mootness. *Hunt v. NBC,* 872 F.2d 289, 292 (9th Cir.1989).

The court finds that this case satisfies both requirements of the "capable of repetition, yet evading review" exception to the mootness doctrine. In the past California's budget impasses have been of a duration measured in weeks and days. In 1990, for example, the budget due to have been adopted by June 15 was in fact adopted on July 28. Thus the actions which plaintiffs challenge are "too short to be fully litigated." *Id.* Similarly, given the fact that the state has not timely adopted a budget in five of the last eight years, the court finds it reasonably likely that the plaintiff class may be subjected to the same state action again in the future. In this regard, the court notes that this case constitutes the second time the plaintiff class has faced the issue. *See Coalition for Economic Survival v. Deukmejian,* 171 Cal.App.3d 954, 217 Cal.Rptr. 621 (1985) (discussed *infra*). For these reasons, the court concludes that this action is not moot.

### III. PREEMPTION

■ Plaintiffs contend that, when the state budget is not timely enacted, Cal. Const. art. XVI, § 7 and Cal.Gov't Code § 13340 place a duty on defendants which conflicts with defendants' obligations under federal AFDC law. Where state and federal law conflict, plaintiffs note, the supremacy clause of the United States Constitution, art. VI, cl. 2,[11] mandates the primacy of federal law.

Plaintiffs cite three cases analogous to the one at bar in support of their motion for summary judgment. In *Coalition for Basic Human Needs v. King,* 654 F.2d 838 (1st Cir.1981), the plaintiffs were a class of AFDC and welfare recipients who brought a federal action challenging the state of Massachusetts' non-payment of benefits due to a state budget stalemate. Plaintiffs' suit was based in part on 42 U.S.C. § 602(a)(10), the same statute upon which the instant plaintiffs rely in part, requiring participating states to furnish AFDC assistance with "reasonable promptness." The district court denied the plaintiffs' request for a TRO.

The First Circuit issued an injunction ordering the state to "take all steps that may be necessary to ensure that the second semi-monthly checks of July will issue promptly and on schedule to all AFDC recipients, and that issuance of such checks shall continue on schedule, until final disposition of this appeal." *Id.* at 843. In reaching this result the court specifically held that plaintiffs were likely to prevail on their claim that the state's non-payment of AFDC benefits violated § 602(a)(10). The court found this interpretation of § 602(a)(10) supported by 45 C.F.R. § 206.-10(a)(5)(i),[12] by case law,[13] and by policy considerations.

---

**11.** U.S. Const. art. VI, § 2, provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

**12.** 45 C.F.R. § 206.10(a)(5)(i) provides in pertinent part: "Financial assistance and medical care and services included in the plan shall be furnished promptly to eligible individuals without any delay attributable to the agency's ad-

ministrative process, and shall be continued regularly to all eligible individuals until they are found to be ineligible."

**13.** The First Circuit cited the following: *Like v. Carter,* 448 F.2d 798 (8th Cir.1971); *Morgan v. Maher,* 449 F.Supp. 229 (D.Conn.1978), *aff'd,* 591 F.2d 1331 (2d Cir.1978); *Cornelius v. Minter,* 395 F.Supp. 616 (D.Mass.1974); *Adens v. Sailer,* 312 F.Supp. 923, 927 (E.D.Pa.1970). *See Coalition for Basic Human Needs,* 654 F.2d at 841.

In *Coalition for Economic Survival v. Deukmejian,* 171 Cal.App.3d 954, 217 Cal. Rptr. 621, plaintiffs sued officials of the state of California in the Los Angeles Superior Court to compel them to continue making timely AFDC payments when the state was in the midst of a budget impasse. Plaintiffs relied in part on federal requirements of reasonable promptness in paying aid to eligible recipients. The defendant state officials argued that the California Constitution prevented them from paying recipients, and the trial court refused to grant a TRO. Plaintiffs filed a petition for a writ of mandamus and a temporary stay in the California Supreme Court. The Supreme Court issued an interim stay ordering the state to refrain from withholding AFDC payments which were due. *See Coalition for Economic Survival,* 171 Cal. App.3d at 957, 217 Cal.Rptr. 621.

In *UAW v. Kiddoo, et al.,* Case No. Civ. S-83-741, this court, by Schwartz, J., issued a TRO ordering California state officials to pay unemployment insurance benefits due to eligible recipients during the 1983 budget standoff.

The instant case presents the court with an analogous situation. The defendants were prohibited by state law from providing federal and state funds under the AFDC program during the period of the 1990 budget impasse. Federal law clearly requires 10 days notice before the flow of AFDC benefits may be disrupted and otherwise requires prompt payment. The state did not provide AFDC recipients with written notice. Thus the court issued a TRO requiring the state to continue meeting its obligations under federal law. The case, as it pertains to the state's acts during the summer of 1990, has not materially changed since the court ordered temporary equitable relief. Defendants do not contend in their memorandum of points and authorities that plaintiffs' analysis of the requirements of federal law governing the AFDC program is faulty. Nor did defendants challenge plaintiffs' theory at oral argument.[14]

Plaintiffs have met their burden of demonstrating the absence of any genuine issues of material fact. *See* Fed.R.Civ.P. 56(c); *State of Alaska v. United States,* 754 F.2d 851, 853 (9th Cir.1985), *cert denied,* 474 U.S. 968, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985). Defendants have not met their resulting burden of demonstrating the existence of genuine issues of material fact which preclude summary adjudication of the case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). For these reasons, the court finds that plaintiffs are entitled to judgment as a matter of law.

## IV. Remedies

Plaintiffs seek both declaratory and injunctive relief. Each remedy will be discussed in turn.

---

14. The court notes that defendants did argue, in a brief filed on July 19, 1990, in opposition to plaintiffs' then-calendared motion for preliminary injunction, that the halting of AFDC payments did not violate applicable federal requirements.

Specifically, defendants argued that: (1) the "reasonable promptness" requirement of 42 U.S.C. § 602(a)(10)(A) does not require payments be made at a particular time, and therefore that the statutory standard is flexible enough to allow for a delay in payments due to a budget impasse; (2) the requirement that benefits "shall be continued regularly" until the recipient is found ineligible, 45 C.F.R. § 206.-10(a)(5)(i), does not require payments be made at a specific time, and that the temporary suspension of benefits does not violate the regulation; and (3) an interruption of benefits due to a budget impasse is not an action to "discontinue, terminate, suspend or reduce assistance" within the meaning of 45 C.F.R. § 205.10(a)(4).

The court notes that defendants' reading of the federal laws and regulations governing the AFDC program is contrary to the plain meaning and language of those laws. Moreover, the context of the AFDC program makes defendants' interpretation inappropriate. Recipients typically depend on the twice-a-month AFDC benefits for basic necessities, such as food and shelter. *See* Declarations of Stephanie Pratt, ¶ 1; Marilyn Charlesworth, ¶ 1; Lisa Adams, ¶ 2-3; JoLynn Grey, ¶ 5; Lisa Spencer, ¶ 5. Virtually any delay in the payment of benefits poses a substantial threat of imminent hardship to recipients. *See* Declaration of Toni Reinis, ¶ 1, 4. The language of the statute and regulations is designed to avoid this hardship.

## A. Declaratory Relief

■ The Declaratory Judgment Act provides that: "In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). *See also* Fed.R.Civ.P. 57.[15] The declaratory judgment device allows parties uncertain of their obligations to avoid incurring liability for future acts by obtaining judgment in advance of performance of the act at issue. *Societe de Conditionnement v. Hunter Eng. Co., Inc.,* 655 F.2d 938, 943 (9th Cir.1981). Declaratory judgments also promote judicial efficiency by avoiding multiplicity of actions between the parties. *Id.* Although declaratory relief is an equitable remedy the grant of which is discretionary, *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1217 (7th Cir.1980), courts liberally grant such relief when it will "serve a useful purpose in clarifying the legal relations in issue or terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Tierney v. Schweiker,* 718 F.2d 449, 456 (D.C.Cir.1983).

Declaratory judgments provide a useful solution in cases where "there may be an actual dispute about the rights and obligations of the parties, and yet the controversy may not have ripened to a point at which an affirmative remedy is needed." 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure: Civil 2d,* § 2751, at 568 (1983). The Supreme Court has noted that:

> [T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). Professors

Wright and Miller suggest that "the practical likelihood that the contingencies will occur and that the controversy is a real one should be decisive in determining whether an actual controversy exists." 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure: Civil 2d,* § 2757, at 587 (1983).

Declaratory judgment may be an effective alternative to injunctive relief, available on a lesser showing. *Tierney,* 718 F.2d at 457. "Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction ... 'The express purpose of the Federal Declaratory Judgment Act was to provide a milder alternative to the injunction remedy.'" *Steffel v. Thompson,* 415 U.S. 452, 466–67, 94 S.Ct. 1209, 1219–20, 39 L.Ed.2d 505 (1974) (quoting *Perez v. Ledesma,* 401 U.S. 82, 111, 91 S.Ct. 674, 690, 27 L.Ed.2d 701 (1971) (separate opinion of Brennan, J.)).

■ As noted above, the dispute which occurred between the parties during July, 1990, is likely to recur at some time in the future. During that dispute, the parties took substantially conflicting views of the federal and state laws at issue, and possessed adverse legal interests which remain both immediate and real. For these reasons, the court hereby grants plaintiffs the declaratory relief which they seek, as set forth below.

## B. Injunctive Relief

The basis for injunctive relief in the federal courts, whether preliminary or permanent, "has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). Injunctions are equitable remedies which are not issued as a matter of course. "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.... [A] federal judge sitting as chancellor is not mechanically obligated to

---

**15.** Rule 57 provides in part that "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

grant an injunction for every violation of law." *Amoco Prod. Co. v. Village of Gambell, Alaska,* 480 U.S. 531, 542, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987).

■■■ Three related factors in this case counsel against issuing injunctive relief. First, California has elected a new governor and a new treasurer subsequent to the resolution of the July, 1990, budget difficulties. Similarly, the named defendant director of the Department of Social Services, Linda McMahan, no longer occupies that position. Controller Gray Davis, who does not oppose plaintiffs' position, is the only named defendant presently in the case who was involved in the action during July, 1990. Second, defendants assert that presently they do not have a policy of withholding AFDC payments absent budgetary authorization. Third, considerations of federalism counsel federal courts to act with restraint in cases such as the one at bar, involving the state's budgetary and political processes.[16] *See, e.g., City of Los Angeles v. Lyons,* 461 U.S. 95, 112, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983) ("In exercising their equitable powers federal courts must recognize '[t]he special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law' "); *Rizzo v. Goode,* 423 U.S. 362, 380, 96 S.Ct. 598, 608, 46 L.Ed.2d 561 (1976) (the principles of federalism "have applicability where injunctive relief is sought, not against the judicial branch of the state government, but against those in charge of an executive branch of an agency of state or local governments"). *See also* P. Bator, P. Mishkin, D. Meltzer & D. Sha-

piro, *Hart & Wechsler's The Federal Courts & The Federal System,* 264–70 (3d ed.1988). Thus the court presently declines to grant plaintiffs the injunctive relief which they seek. Plaintiffs may renew their application for injunctive relief in the light of new circumstances.

For the foregoing reasons, and good cause appearing therefor,

IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment is granted.

IT IS HEREBY DECLARED that defendants' failure to issue AFDC benefits regularly with reasonable promptness due to the absence of a legislative budgetary appropriation for the AFDC program because of a budget impasse violates 42 U.S.C. § 602(a)(10)(A) and 45 C.F.R. § 206.-10(a)(5)(i).

IT IS FURTHER DECLARED that defendants' termination or reduction of AFDC benefits due to the absence of a legislative budgetary appropriation for the AFDC program because of a budget impasse without timely notice violates 45 C.F.R. § 205.10(a)(4)(i) and (iii).

IT IS SO ORDERED.

---

**16.** While neither party has raised the Eleventh Amendment as an issue in this case, the court pauses to comment upon its application. The Eleventh Amendment bars an order directing the expenditure of money by state officials, whether prospectively or retrospectively, unless the effect on the state's treasury is merely ancillary. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Since the AFDC program involves the payment of money, it might be argued that the Eleventh Amendment bars a federal court from ordering compliance with the federal conditions of the AFDC program. However, *Edelman* itself was a suit for injunctive relief against a state violation of the terms of a cooperative federalism program, such as AFDC. The Supreme Court later noted that *Edelman* "held that the suit was proper to the extent it sought 'payment of state funds ... as a necessary consequence of compliance *in the future* with a substantive federal-question determination....' " *Milliken v. Bradley,* 433 U.S. 267, 289, 97 S.Ct. 2749, 2761, 53 L.Ed.2d 745 (1977) (quoting *Edelman,* 415 U.S. at 668, 94 S.Ct. at 1358 (emphasis added in *Milliken*)). The doctrine of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) continues to permit "federal courts to enjoin state officials to conform their conduct to the requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." *Milliken,* 433 U.S. at 289, 97 S.Ct. at 2761.