Margaret DOWLING and Vernon Cox, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Gray DAVIS, Controller of the State of California, et al., Defendants,

Service Employees International Union Local 434, AFL–CIO, et al., Plaintiff–Intervenors.

No. CIV S–90–0866 DFL.

United States District Court, E.D. California.

July 29, 1992.

Lynn S. Carman, Bay Area Legal Foundation, Richard G. McCracken, Davis, Cowell and Bowe, San Francisco, CA, Craig Becker, University of CA at Los Angeles, J. Mark Waxman, Weissburg and Aronson, Los Angeles, CA, for plaintiffs.

Robert D. Shuman, Shelley Mydans, CA State Atty. Gen., Asst. Deputy Atty. Gen., Edmund Brehl, CA Dept. of Personnel Admin., Sacramento, CA, for defendants.

## MEMORANDUM OF DECISION AND ORDER

LEVI, District Judge.

Plaintiffs filed this case in July 1990 during the budget lapse of that year. The complaint alleges that defendants' refusal to pay claims by Medi–Cal and In–Home Supportive Services providers and suppliers, because of the lack of a budget, violates due process and federal statutory provisions governing medicaid and In–Home Supportive Services (IHSS). This case was originally assigned to visiting Judge Tanner. On July 19, 1990, Judge Tanner issued a preliminary injunction requiring defendants to pay provider claims during the budget impasse. At the hearing on the injunction, the court certified two subclasses of plaintiffs, consisting of (1) a Medi–Cal subclass of Medicaid recipients and beneficiaries, and (2) an IHSS subclass of recipients and providers of In–Home Supportive Services. The court also permitted the Service Employees International Union Local 434, AFL–CIO, representing providers of In–Home Supportive Services, as well as

two recipients of In–Home Supportive Services, to intervene as plaintiffs. The parties have now filed cross motions for summary judgment. Plaintiffs seek a declaratory judgment and a permanent injunction requiring defendants to pay Medi–Cal and IHSS provider claims during periods when there is no state budget. In addition, amici curiae, representing associations that provide medical services through the Medicaid program, have filed a brief in opposition to defendants' motion for summary judgment.[1]

Plaintiffs' claims fall into two distinct categories and are based on different provisions of law. As to Medi–Cal payments, plaintiffs primarily make a preemption argument based on the federal statutory scheme governing Medicaid programs. They argue that defendants' refusal to make Medi–Cal payments during a budget lacuna violates federal statutes requiring timely and certain payment. As to IHSS, plaintiffs argue that an interruption in payments, without notice and an opportunity to be heard, violates due process. Plaintiffs also argue that the interruption in payments is inconsistent with the federal law that provides funding for IHSS and whose purpose is to prevent aid recipients from being forced from their homes into inappropriate institutional care.

### I. *Medi–Cal*

Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. creates the Medicaid program. The program is jointly financed by state and federal funds and is administered primarily by the states according to a state plan approved by the federal government. *See* 42 U.S.C. § 1396a(a). The states' plans must provide for payment "as may be necessary ... to assure that payments are consistent with efficiency, economy and quality of care." 42 U.S.C. § 1396a(a)(30). Payments "must be sufficient to enlist enough providers so that services under the plan are available to recipients at least to the extent that those services are available to the general population." 42 C.F.R. § 447.204. The

states must pay 90% of claims within 30 days and 99% of claims within 90 days of receipt. *See* 42 U.S.C. § 1396a(a)(37).

Plaintiffs argue that the State of California violates the Medicaid Act when it refuses to make payment during a budgetary lapse. Plaintiffs argue that at all times during its participation in the Medicaid program, the State must be "in a position to provide for or assure payment." Amicus brief at 11; *see Alabama Nursing Home Ass'n v. Harris,* 617 F.2d 388, 395–96 (5th Cir.1980) ("Inadequate state appropriations do not excuse noncompliance").

The defendants make two preliminary arguments at the outset before addressing the merits of plaintiffs' claim. First, the State argues that principles of federalism forbid the court from ordering defendants to authorize expenditures of public monies when such monies have not been appropriated and when state law forbids such expenditure without appropriation. Second, the State argues that the matter is now moot because of the passage of legislation on June 30, 1991, that placed the Medi–Cal program on an accrual basis. According to the State,

> [t]his legislative change altered the accounting and payment practices of the Medi–Cal program such that the state's accounting of revenues and expenditures in the program now permits payment of claims accruing during the prior budget year during a budget impasse. ... Therefore, the claims of Medi–Cal providers submitted for payment after June 30, the last day of the fiscal year, will *generally* be paid during a budget impasse.

Brief at 13 (emphasis added).

■ The court is not persuaded by these two arguments. Although the general category of "federalism concerns" may play a part in litigation such as this, particularly in the interpretation of the regulatory scheme and in the consideration of remedies, these concerns do not block federal court review.

---

1. Throughout this order the court generally will refer to plaintiffs, plaintiff-intervenors, and amici curiae as "plaintiffs" without distinguishing which of these parties has advanced the particular argument under discussion. The court is well

aware that certain of the arguments advanced are not subscribed to by all plaintiffs.

The defendants are referred to in this order alternatively as the "State."

The Supremacy Clause does not permit federal law to be superseded by state law, including state constitutional provisions. There is no impediment to federal court review because the issues involved concern the state's budgetary and political processes. *See Pratt v. Wilson,* 770 F.Supp. 539, 543–46 (E.D.Cal.1991).

■ The question of mootness is a closer one. Defendants argue that the possibility that the State will not pay on Medi–Cal claims during a budget impasse is no longer "capable of repetition yet evading review," because with accrual accounting it will continue to pay claims accrued in the prior budget year. Plaintiffs argue that accrual accounting does not in itself satisfy the State's obligation to "assure" payment by standing ready to make good on all Medi–Cal claims. Plaintiffs suggest that unless the State is able to make supplemental appropriations as soon as needed, it cannot meet its responsibility of assuring payment.

As discussed below, the change to accrual accounting does affect the court's view of the merits of plaintiffs' claim. But the court does not find that the change in accounting makes moot plaintiffs' claim that federal law requires the State at all times to stand ready to pay all claims immediately. By its use of the word "generally," in the portion of its brief quoted above, the State apparently concedes that even with accrual accounting there is no absolute guarantee that all Medi–Cal claims can be paid during budget impasses. Thus, the failure to "assure" payment, if required by federal law, is "capable of repetition yet evading review." *See Pratt v. Wilson, supra,* 770 F.Supp. at 542.

■ Although not persuaded by defendants' jurisdictional arguments, the court finds for defendants as to the merits of plaintiffs' claim. Quite simply there is no provision of federal law that reasonably can be interpreted to require the State at all times to stand ready to pay all Medi–Cal claims immediately. The statutory language upon which plaintiffs principally rely requires a

state to "assure that payments are consistent with efficiency, economy and quality of care" and to "provide ... for payment through the use" of reasonable and adequate rates. 42 U.S.C. §§ 1396a(a), (a)(30). This statutory language is directed to the amount and calculation of the payment. Nothing in this language requires a state at all times to "assure" that its budgetary allocation is adequate to meet all claims immediately. Indeed, if this were the case, the State would be in violation the moment it seemed clear that the allocation would need supplementation in the future.

The regulatory scheme does address the promptness with which claims must be paid. The statute and regulations require that 90% of "clean" claims must be paid within 30 days of receipt and 99% of such claims within 90 days. All other claims must be paid within 12 months of the date of receipt. *See* 42 U.S.C. § 1396a(a)(37); 42 C.F.R. § 447.-45(d)(2), (3) and (4). The State concedes it must adhere to these time requirements. But there are no facts in the record that support the view that a budget impasse necessarily leads to a violation of these payment schedules. Indeed, the evidence is quite the reverse. *See* Declaration of Ted Spelis. Although there have been five budget impasses in recent memory, in no case was there a delay in adopting a budget which exceeded thirty days from July 1, which is the end of the fiscal cycle. The change in accounting from cash to accrual as to Medi–Cal claims makes it less likely that a budget impasse will have any necessary effect on the State's ability to adhere to federal time requirements.[2]

Given that the statute and regulations impose explicit time requirements, the court will not interpret other regulatory provisions to apply a stricter standard to the State's budgetary processes absent a clearer directive. In short, when the issue is the promptness with which the State makes payment, the critical inquiry is not whether there is at all times a budget or a supplemental appropriation but whether the State is

---

**2.** Plaintiffs contend that "delay" in payment of clean claims in the last 3 years has averaged 28 days. Even if true, this evidence does not establish that 90% of clean claims were paid outside of the 30 day requirement.

prepared to meet the timelines set forth in statute and regulation.[3] So long as the State meets these timelines there is no violation of federal law. *See Illinois Council on Long Term Care v. Bradley,* 759 F.Supp. 1309 (N.D.Ill.1991).[4] For the above-stated reasons, defendants' cross motion for summary judgment is granted as to plaintiffs' claims relating to Medi–Cal payments during a budget lapse. Plaintiffs' motion for summary judgment as to these claims is denied.

## II. *IHSS*

■ Under California law, aged, blind, and disabled poor persons are eligible to receive In–Home Supportive Services (IHSS). Such services include domestic and personal services, heavy cleaning, accompaniment during necessary travel to health-related appointments, protective supervision, and paramedical services. Cal.Welf. & Inst.Code § 12300. Counties must provide IHSS to qualifying persons, but can provide the services through civil service employees, by contracting with an agency or individual to provide the services, or by paying the beneficiary to purchase the services. Cal.Welf. & Inst.Code § 12302.

Plaintiffs argue that when the State suspended IHSS payments to both beneficiaries and providers, because of the absence of a budget on July 1, 1990, the State violated due process by failing to give adequate advance notice. Plaintiffs acknowledge that the State may cancel the IHSS program and may stop payments during a lapse in the budget.[5] But they argue nonetheless that they have a property interest in continued receipt of IHSS payments, and the State may not "suspend" these payments without due process—

that is, advance notice and an opportunity to be heard.

■ The argument advanced confuses the due process required for decisions as to the continued participation of an individual in a government program with that required as to legislative action to delay, cancel or modify such a program. Thus, citing to *Bignall v. North Idaho College,* 538 F.2d 243, 247–48 (9th Cir.1976), and *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985), plaintiffs argue that a property right in employment, and a right to due process, exists for public employees even though all employees may be laid-off for economic reasons. Each of the cases cited involved the termination of a particular public employee for an ostensible reason. In each case the court found a property interest in continued employment just as courts have found a property interest in the continued receipt of welfare benefits. "[A]ccordingly, the procedures that are employed in determining *whether an individual may continue to participate in the statutory program* must comply with the commands of the Constitution." *Atkins v. Parker,* 472 U.S. 115, 128, 105 S.Ct. 2520, 2528, 86 L.Ed.2d 81 (1985) (emphasis added). The property interest of an individual in a government program exists so long as the program exists. But when an entire program is cancelled, such that individualized determinations of entitlement to benefit are not made, the individual's property interest is not impaired because the individual has no property interest in the indefinite continuation of a government program.

---

**3.** Because the statute and regulations specifically set forth the time within which claims must be paid, plaintiffs' efforts to rely on other sections of the regulations and statute to suggest that any delay in payment violates federal law is unavailing. *See* plaintiffs' brief at 8.

**4.** Plaintiffs' claim that a delay of payment to providers, during a budget impasse, violates Medi–Cal recipients' right to due process or right to notice. But a delay of payment to a provider—otherwise consistent with the time requirements in the regulations—is not a termination, suspension or reduction of medicaid services provided to *recipients* requiring notice and hearing. *See* 42 C.F.R. § 431.200 et seq. For the

same reason, no due process right of recipients is at issue. See also the discussion of *Atkins v. Parker,* 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985), in the next section of this opinion.

**5.** "Plaintiff–Intervenors do not argue they have a right to continued receipt of services in a manner inconsistent with the Budget Act. They do not argue that the state must continue to pay for the services in the absence of a budget bill. This would not only be inconsistent with the annual Budget Act, it would be unconstitutional under Article XVI, section 7 of the state Constitution." Reply Brief of Plaintiff–Intervenors, at 7 n. 4.

Thus, in *Atkins v. Parker, supra*, the court considered whether a 1981 amendment to the Food Stamp Act, altering the manner in which family income is calculated, could only be implemented after advance, individual notice. The Court found that no such notice was required:

> [t]he congressional decision to lower the earned-income deduction from 20 percent to 18 percent gave many food-stamp households a less valuable entitlement in 1982 than they had received in 1981. But the 1981 entitlement did not include any right to have the program continue indefinitely at the same level, or to phrase it another way, *did not include any right to the maintenance of the same level of property entitlement.* Before the statutory change became effective, the existing property entitlement did not qualify the legislature's power to substitute a different, less valuable entitlement at a later date.

*Id.* at 129, 105 S.Ct. at 2529 (emphasis added). Similarly, in this case, a recipient of IHSS payments does not have a property interest in the continued funding of that program in the next fiscal year.

Moreover, even if such a property interest may be deemed to exist, when the legislature suspends a program or alters its terms, the legislative process provides all of the due process that is required. In *Atkins* the Court rejected the claim that welfare recipients have any greater right to notice of legislative changes to a welfare program than any other citizens whose interests are affected by legislation:

> As we have frequently noted: '[A] welfare recipient is not deprived of due process when the legislature adjusts benefit levels.... [T]he legislative determination provides all the process that is due.' The participants in the food-stamp program had no greater right to advance notice of the legislative change ... than did any

other voters.... The claim that petitioners had a constitutional right to better notice of the consequences of the statutory amendment is without merit. All citizens are presumptively charged with knowledge of the law....

*Id.* at 129–30, 105 S.Ct. at 2529.[6] *See Slaughter v. Levine*, 855 F.2d 553 (8th Cir. 1988).

Plaintiffs efforts to escape from the holding in *Atkins* are unavailing. First, plaintiffs argue that even if the State cannot make IHSS payments during a period of no budget, the counties can and must. The simple answer to this argument is that the counties are not before the court. The obligations of the counties during a budget impasse must wait for another day. Second, plaintiffs argue that although the State might cancel the IHSS program, it has not done so. So long as the IHSS statutes exist, plaintiffs argue, a property interest exists unaffected by the State's failure to enact a budget. This argument is no more than a play on words. When the State does not enact a budget, and does not fund any of its entitlement programs, the State has suspended, and therefore altered, its entitlement programs by legislative act.

Finally, on the question of notice, the court concurs in the doubts expressed in *Coalition for Basic Human Needs v. King*, 654 F.2d 838, 841 (1st Cir.1981), as to the practicality or efficacy of any pre-budget stand-off notice:

> Our problem is that not only is case authority for constitutionally required notice based on a preparedness-for-disaster rationale apparently non-existent, but that we cannot easily envisage the kind of notice that should be expected of the Commonwealth. .... [W]e doubt that *pro forma* notice that there might be a *delay* in checks because of the budgetary process would be of much help.

---

**6.** The *Atkins* Court noted that the "presumption" that all citizens know the law "[a]rguably ... may be overcome in cases in which the statute does not allow a sufficient 'grace period' to provide the persons affected by a change in the law with an adequate opportunity to become familiar with their obligations under it." 472 U.S. at 130, 105 S.Ct. at 2529. The requirement of a

"grace period," if it exists at all, has been limited to government takings of real property. *See Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). In *Rosas v. McMahon*, 945 F.2d 1469, 1474–75 (9th Cir.1991), the court rejected the grace period argument in the context of AFDC benefits. The holding in *Rosas* is applicable to an adjustment of IHSS benefits.

In addition to the due process argument, plaintiffs also contend that a delay in IHSS payments violates the federal statute that provides federal block grants for IHSS. Plaintiffs rely on the following portion of the statute's statement of purpose:

> For the purposes of ... encouraging each State, as far as practicable under the conditions in that State to furnish services directed at the goals of— ... (4) preventing or reducing inappropriate institutional care by providing for community-based care, home-based care or other forms of less intensive care.

42 U.S.C. § 1397. This statutory language, however, does not set forth any distinct federal requirements that the states must adhere to. The language merely expresses the goals of the federal block grant. There are no time requirements for payment of IHSS such as exist in the Medicaid statute discussed above. And there is no general language that payments be made promptly. Indeed, by express design the federal statute is designed to "[increase] State flexibility in using social service grants," 42 U.S.C. § 1397, by "[eliminating] burdensome restrictions on programs." 1981 U.S.Code Cong. & Admin.News 396, at 799 (Senate Report). The "basic concept of block grant programs negates any possible conclusion that Congress intended to preempt the entire field." *Meeker v. Manning,* 540 F.Supp. 131, 134–35 n. 7 (D.Conn.1982). Because the federal statute does not impose any standards upon the states, the court finds that the State's budget lapse, and attendant inability to pay IHSS providers and recipients typically for a period of less than one month, does not violate federal law.

### III. *Motion to Amend Complaint*

■ Plaintiffs Dowling and Cox move to amend their complaint to add a claim that defendants may not suspend or delay payment of Medicaid and IHSS providers during periods when the State's budget appropriation for Medicaid and IHSS has been exhausted. Plaintiffs filed the motion to amend as part of their summary judgment papers.

The motion to amend is denied. The court recognizes that amendments are generally liberally permitted. Several reasons support the denial of the motion in the circumstances in this case. First, the motion is untimely. The court scheduled the summary judgment motions in this case based upon the parties' joint representation that the matter was ready and appropriate for summary adjudication. Cross motions for summary judgment were scheduled in the pre-trial scheduling order. At no time did plaintiffs indicate that they intended to seek an amendment materially broadening the scope of the relief sought. Indeed, they represented quite the reverse in their submission prior to the scheduling conference, in which they stated that no amendments to the pleadings were contemplated. From the date of filing, plaintiffs have waited one and one-half years to bring on the motion to amend. The motion is untimely even under liberal standards. Certainly, the motion should have been made well before the cross motions for summary judgment were filed. Second, the motion is a significant shift in legal theory. The case has focussed on the defendants' obligations during a budget lapse. Now plaintiffs seek to shift the focus to defendants' obligations during a budget year when an appropriation may be insufficient. This shift in theory may require defendants to address and investigate a new series of contentions at a point when the case had been scheduled for resolution by cross motion and those motions have been filed. This is unfair to defendants and defeats the court's scheduling order.

Finally, the amendment would be futile. Plaintiffs fail to show that insufficient funding at the close of a fiscal year has led the defendants to violate the time deadlines in the Medicaid Act and its implementing regulations. Since there are no time requirements in the IHSS federal funding law, a budgetary shortfall at the close of the fiscal year does not violate the federal law. Even were plaintiffs to demonstrate that in some past year or years a deficiency had resulted in the IHSS or Medi–Cal appropriations, and that such deficiency violated federal law, the court would not issue an injunction ordering the defendants to maintain the budget for these items at any particular level in *future* years. Such an order would interfere unduly with the State's budgetary process and

738

should only issue in extraordinary circumstances. *See Pratt v. Wilson,* 770 F.Supp. 539, 544 (E.D.Cal.1991), citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ("In exercising their equitable powers federal courts must recognize '[t]he special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law' ").

IV. *Conclusion*

The court recognizes that any interruption in payment to Medi–Cal providers or to IHSS recipients and providers may cause consternation and harm. Nonetheless, in the circumstances of this case federal law does not compel the State to make Medi–Cal and IHSS payments during a temporary budget lapse. The defendants' motion for summary judgment is granted. Plaintiffs' and plaintiff-intervenors' motions for summary judgment is denied. Plaintiffs Dowling and Cox's motion to amend the complaint is denied. The preliminary injunction entered July 19, 1990 is now vacated.

IT IS SO ORDERED.